IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

WALTER WAYNE VEST,        )
                                   )
       Plaintiff,         )
                                   )
v.                            )        CIVIL ACTION NO. 5:08-00219
                                   )
MICHAEL J. ASTRUE,         )
Commissioner of Social Security,   )
                                 )
       Defendant.     )

## M E M O R A N D U M   O P I N I O N

This is an action seeking review of the decision of the Commissioner of Social Security denying Plaintiff's application for Disability Insurance Benefits (DIB), under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. This case is presently pending before the Court on the parties' cross-Motions for Judgment on the Pleadings. (Document Nos. 12 and 13.) Both parties have consented in writing to a decision by the United States Magistrate Judge. (Document Nos. 4 and 5.)

The Plaintiff, Walter Wayne Vest (hereinafter referred to as "Claimant"), filed an application for DIB on November 9, 2004, alleging disability as of March 22, 2004, due to a back injury. (Tr. at 12, 40-44, 57.) The claim was denied initially and on reconsideration.[1] (Tr. at 24-26, 30-32.) On August 12, 2005, Claimant requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 34.) The hearing was held on October 2, 2006, before the Honorable Valerie A. Bawolek. (Tr. at 467-92.) By decision dated February 15, 2006, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 12-19.) The ALJ's decision became the final decision of the Commissioner on

---

[1] On reconsideration of her claim, Claimant alleged depression as an additional disabling impairment. (Tr. at 36.)

March 6, 2008, when the Appeals Council denied Claimant's request for review. (Tr. at 4-6.) On April 1, 2008, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (Document No. 2.)

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2006). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's

2

remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2006). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he had not engaged in substantial gainful activity since March 22, 2004, his alleged onset date. (Tr. at 14, Finding No. 2.) Under the second inquiry, the ALJ found that Claimant suffered from lumbar strain, degenerative disc disease, and chronic obstructive pulmonary disease ("COPD"), which were severe impairments. (Tr. at 14, Finding No. 3.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 15, Finding No. 4.) The ALJ then found that Claimant had a residual functional capacity for light exertional work, with the following limitations:

> He requires a sit/stand option at will. He should never climb ladders, ropes, or scaffolds. He cannot kneel, crouch, or crawl as part of the job. He can only occasionally balance, stoop, and climb stairs and ramps. He must avoid hazards, extreme cold and vibrations. He cannot be exposed to concentrated pulmonary irritants.

(Tr. at 16, Finding No. 5.) At step four, the ALJ found that Claimant could not return to his past relevant work. (Tr. at 17, Finding No. 6.) On the basis of testimony of a Vocational Expert ("VE") taken at the administrative hearing, the ALJ concluded that Claimant could perform jobs such as a file clerk, mail room clerk, and general clerk, at the unskilled, light level of exertion. (Tr. at 18, Finding No. 10.) On this basis, benefits were denied. (Tr. at 19, Finding No. 11.)

Scope of Review

 The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In <u>Blalock v. Richardson</u>, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

<u>Blalock v. Richardson</u>, 483 F.2d 773, 776 (4th Cir. 1972) (quoting <u>Laws v. Celebrezze</u>, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." <u>Oppenheim v. Finch</u>, 495 F.2d 396, 397 (4th Cir. 1974).

 A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

 Claimant was born on August 22, 1956, and was 50 years old at the time of the administrative hearing. (Tr. at 17, 40, 470.) Claimant had a Generalized Equivalency Diploma and received training as an electrician. (Tr. at 17, 63, 471.) In the past, he worked as a mine electrician and roof bolt operator. (Tr. at 17, 58-59, 65-67, 72-73, 487.)

 The Medical Record

 The Court has reviewed all the evidence of record, including the medical evidence, and will discuss it below in relation to Claimant's arguments.

Claimant's Challenges to the Commissioner's Decision

Claimant alleges that the Commissioner's decision is not supported by substantial evidence because the ALJ erred in not giving great weight to the opinion and residual functional capacity assessment of Claimant's treating physician, Dr. John M. Daniel, M.D., without suitable explanation as to why she failed to give greater weight to Dr. Daniel's opinion. (Document No. 12 at 2, 7-10.) Claimant asserts that the ALJ "cited no objective medical evidence, only the opinions of the non-examining reviewing physicians, and an impartial vocational expert who testified at the hearing to support her assessment of mental and physical residual functional capacity." (Id. at 7.) Specifically, Claimant asserts that the ALJ failed to address the length of the treatment relationships, the extent of the treatment or specialization of the doctors providing opinions on RFC, or an explanation as to why Dr. Daniel's opinion was inconsistent with his treatment records, the assessment, and the other credible evidence of record, as required by 20 C.F.R. §§ 404.1527(d)(2)-(6) and 416.927(d)(2)-(6). (Id. at 9.) Thus, Claimant contends that the Court is "left to speculate as to her reason." (Id.)

The Commissioner asserts that Claimant's arguments are without merit and that substantial evidence supports the ALJ's decision. (Document No. 13 at 7-11.) The Commissioner first points out that the objective evidence of record, including the examination notes from Drs. Orphanos, Amores, and Beard, as well as the MRI studies, supports the ALJ's RFC assessment. (Id. at 7-8.) Next, the Commissioner notes that Claimant's ability to perform a wide range of activities supports the ALJ's RFC assessment. (Id. at 8.) Finally, the Commissioner asserts that the ALJ's RFC assessment was consistent with the opinions of Drs. Beard, Lambrechts, and Reddy. (Id. at 8-9.) As the finder of fact, the ALJ "reasonably found that [Dr. Daniel's opinion] was not entitled to significant weight" because it was based on Claimant's unsubstantiated subjective complaints rather

than supporting objective medical evidence. (<u>Id.</u> at 9-10.)  The Commissioner points out that Dr. Daniel failed to cite any specific objective findings that supported his opinion. (<u>Id.</u> at 10.) Dr. Daniel consistently found that Claimant had no neurological abnormalities. (<u>Id.</u>) Furthermore, the Commissioner asserts that Dr. Daniel's opinion was inconsistent with the well-supported opinions of Drs. Beard, Lambrechts, and Reddy. (<u>Id.</u>) Contrary to Claimant's allegations, the Commissioner asserts that the ALJ specifically recognized that Dr. Daniel was Claimant's treating physician and discussed the extent of Claimant's treatment, and asserts that Dr. Daniel was a family physician who did not have a specialty in orthopaedics or neurology. (<u>Id.</u> at 11.) The Commissioner therefore, contends that Claimant's arguments are without merit and that the ALJ's RFC assessment is supported by substantial evidence. (<u>Id.</u>)

<u>Analysis</u>.

At steps four and five of the sequential analysis, the ALJ must determine the claimant's residual functional capacity for substantial gainful activity. "RFC represents the most that an individual can do despite his or her limitations or restrictions." <u>See</u> Social Security Ruling 96-8p, 61 Fed. Reg. 34474, 34476 (1996). Pursuant to SSR 96-8p, the RFC assessment "must be based on all of the relevant evidence in the case record," including " the effects of treatment" and the "limitations or restrictions imposed by the mechanics of treatment; e.g., frequency of treatment, duration, disruption to routine, side effects of medication." Looking at all the relevant evidence, the ALJ must consider the claimant's ability to meet the physical, mental, sensory and other demands of any job. 20 C.F.R. §§ 404.1545(a), 416.945(a) (2006). "This assessment of your remaining capacity for work is not a decision on whether you are disabled, but is used as the basis for determining the particular types of work you may be able to do despite your impairment(s)." <u>Id.</u> "In

6

determining the claimant's residual functional capacity, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of her impairments." Ostronski v. Chater, 94 F.3d 413, 418 (8th Cir. 1996).

Opinions on a claimant's Residual Functional Capacity are issues that are reserved to the Commissioner. The Regulations state that:

> We use medical sources, including your treating source, to provide evidence, including opinions, on the nature and severity of your impairment(s). Although we consider opinions from medical sources on issues such as whether your impairment(s) meets or equals the requirements of any impairment(s) in the Listing of Impairments in appendix 1 to subpart P of part 404 of this chapter, your residual functional capacity . . . or the application of vocational factors, the final responsibility for deciding these issues is reserved to the Commissioner.

See 20 C.F.R. § 416.927(e)(2) (2006).

> In determining what a claimant can do despite his limitations, the SSA must consider the entire record, including all relevant medical and nonmedical evidence, such as a claimant's own statement of what he or she is able or unable to do.  That is, the SSA need not accept only physicians' opinions.  In fact, if conflicting medical evidence is present, the SSA has the responsibility of resolving the conflict.

Diaz v. Chater, 55 F.3d 300, 306 (7th Cir. 1995) (citations omitted).

The Regulations state that opinions on these issues are not medical opinions as described in the Regulation dealing with opinion evidence (20 C.F.R. §§ 404.1527(a)(2) and 416.927(a)(2)); rather, they are opinions on issues reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e) and 416.927(e). For that reason, the Regulations make clear that "[w]e will not give any special significance to the source of an opinion on issues reserved to the Commissioner. . . ." Id. §§ 404.1527(e)(3) and 416.927(e)(3). The Regulations further provide that "[f]or cases at the Administrative Law Judge hearing or Appeals Council level, the responsibility for deciding your

7

residual functional capacity rests with the Administrative Law Judge or Appeals Council." See 20 C.F.R. §§ 404.1545 and 416.946 (2006). However, the adjudicator must still apply the applicable factors in 20 C.F.R. § 416.927(d) when evaluating the opinions of medical sources on issues reserved to the Commissioner. See Social Securing Ruling ("SSR") 96-5p, 61 FR 34471, 34473 (1996).

Social Security Ruling 96-5p makes a distinction between an RFC assessment, which is "the adjudicator's ultimate finding of 'what you can still do despite your limitations,'" and a "'medical source statement,' which is a 'statement about what you can still do despite your impairment(s)' made by an individual's medical source and based on that source's own medical findings." Id. SSR 96-5p states that "[a] medical source statement is evidence that is submitted to SSA by an individual's medical source reflecting the source's opinion based on his or her own knowledge, while an RFC assessment is the adjudicator's ultimate finding based on a consideration of this opinion and all the other evidence in the case record about what an individual can do despite his or her impairment(s)." Adjudicators "must weigh medical source statements under the rules set out in 20 C.F.R. § 416.927, providing appropriate explanations for accepting or rejecting such opinions." Id. at 34474.

Every medical opinion received by the ALJ must be considered in accordance with the factors set forth in 20 C.F.R. §§ 404.1527(d) and 416.927(d) (2006). These factors include: (1) length of the treatment relationship and frequency of evaluation, (2) nature and extent of the treatment relationship, (3) supportability, (4) consistency, (5) specialization, and (6) various other factors. Additionally, the Regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."

Id. §§ 404.1527(d)(2) and 416.927(d)(2).

Under §§ 404.1527(d)(1) and 416.927(d)(1), more weight is given to an examiner than to a non-examiner. Sections 404.1527(d)(2) and 416.927(d)(2) provide that more weight will be given to treating sources than to examining sources (and, of course, than to non-examining sources). Sections 404.1527(d)(2)(I) and 416.927(d)(2)(I) state that the longer a treating source treats a claimant, the more weight the source's opinion will be given. Under §§ 404.1527(d)(2)(ii) and 416.927(d)(2)(ii), the more knowledge a treating source has about a claimant's impairment, the more weight will be given to the source's opinion. Sections 404.1527(d)(3), (4) and (5) and 416.927(d)(3), (4), and (5) add the factors of supportability (the more evidence, especially medical signs and laboratory findings, in support of an opinion, the more weight will be given), consistency (the more consistent an opinion is with the evidence as a whole, the more weight will be given), and specialization (more weight given to an opinion by a specialist about issues in his/her area of specialty). Unless the ALJ gives controlling weight to a treating source's opinion, the ALJ must explain in the decision the weight given to the opinions of state agency psychological consultants. 20 C.F.R. §§ 404.1527(f)(2)(ii) and 416.927(f)(2)(ii) (2006). The ALJ, however, is not bound by any findings made by state agency medical or psychological consultants and the ultimate determination of disability is reserved to the ALJ. Id. §§ 404.1527(f)(2)(I) and 416.927(f)(2)(I).

In evaluating the opinions of treating sources, the Commissioner generally must give more weight to the opinion of a treating physician because the physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2006). Nevertheless, a treating physician's opinion is afforded "controlling weight only if two conditions are met: (1) that it is supported by clinical and laboratory diagnostic

techniques and (2) that it is not inconsistent with other substantial evidence." <u>Ward v. Chater</u>, 924 F. Supp. 53, 55 (W.D. Va. 1996); <u>see also</u>, 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2006). The opinion of a treating physician must be weighed against the record as a whole when determining eligibility for benefits.  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2006). Ultimately, it is the responsibility of the Commissioner, not the court to review the case, make findings of fact, and resolve conflicts of evidence. <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990). As noted above, however, the Court must not abdicate its duty to scrutinize the record as a whole to determine whether the Commissioner's conclusions are rational. <u>Oppenheim v. Finch</u>, 495 F.2d 396, 397 (4th Cir. 1974).

If the ALJ determines that a treating physician's opinion should not be afforded controlling weight, the ALJ must then analyze and weigh all the evidence of record, taking into account the factors listed in 20 C.F.R. §§ 404.1527 and 416.927(d)(2)-(6).

Respecting Claimant's physical impairments, the medical evidence reveals the following treatment and assessments.

<u>*Dr. Daniel*</u>.

The medical records evidence Claimant's treatment with Dr. John M. Daniel, M.D., from February 12, 2004, through September 7, 2006. (Tr. at 150-60, 408-11, 443-50.) On February 12, and September 28, 2004, Claimant complained of episodes of sharp back pain, for which Dr. Daniel prescribed Skelaxin, Flexeril, Hydrocodone, and Tylenol. (Tr. at 150, 152.) Dr. Daniel noted that Claimant was undergoing chiropractic treatment from Dr. Chipley and that Claimant could neither lift nor bend. (Tr. at 153.) On May 2, 2005, Dr. Daniel completed a form Medical Assessment of Ability to Do Work-Related Activities (Physical), on which he opined that Claimant was limited to

lifting or carrying forty pounds occasionally and twenty-five pounds frequently due to his back pain with radiation into the legs. (Tr. at 408-11.) Dr. Daniel opined that Claimant could walk, stand, or sit two hours in an eight-hour workday for fifteen minutes without interruption. (Tr. at 409.) He noted that "[a]ny one position of standing or sitting has to be changed due to low back pain." (Id.) Dr. Daniel further opined that Claimant could never climb, stoop, crouch, kneel, or crawl, and occasionally could perform activities requiring balance, all due to back and leg pain. (Id.) Dr. Daniel noted that Claimant's degenerative changes in the cervical spine affected his ability to reach, handle, feel, push, and pull. (Tr. at 410.) He further noted that Claimant should avoid heights and moving machinery. (Id.)

On March 22, 2005, Claimant reported to Dr. Daniel that he had constant low back pain, and also noted that his wheezing was relieved by Singulair. (Tr. at 449.) Dr. Daniel continued to prescribe Flexeril and Hydrocodone. (Tr. at 450.) On October 4, 2005, Claimant reported continued back pain with radiation down the left leg, but on March 16, 2006, he reported that he had been doing well. (Tr. at 446, 48.) Claimant again reported severe back pain on June 16 and September 7, 2006, (Tr. at 444-45.) Dr. Daniel's treatment remained the same. (Id.)

*Dr. Orphanos.*

On July 12, 2004, Claimant was examined by Dr. George Orphanos, M.D., an orthopedic surgeon, at the request of the West Virginia Workers' Compensation Commission for evaluation of a low back injury sustained on March 22, 2004. (Tr. at 137-48.) Claimant reported a history of at least four or five previous injuries involving the lumbar spine. (Tr. at 137.) The x-rays of March 24, 2004, failed to demonstrate any acute bony abnormalities, but evidenced some degenerative changes at L3-4. (Tr. at 138.) The MRI scan revealed a minor disc bulge at the same level. (Tr. at 138, 389.)

11

Specifically, the MRI of Claimant's lumbar spine on March 24, 2004, revealed "[m]inimal annular bulge at the level of the 2nd and 3rd lumbar interspaces with minimal central compression at these levels. . . . Minimal degenerative changes of the lumbar spine." (Tr. at 389.) A prior lumbar spine MRI on June 11, 2000, revealed mild degenerative disc disease at L3-4, with no accompanying disc herniation. (Tr. at 391.) Following his injury, Claimant underwent a course of physical therapy and reported gradual improvement with treatment. (Tr. at 139.) On examination, Claimant ambulated without assistive device or definite limp, and exhibited tenderness in the midline of the lumbar spine. (Tr. at 138) Claimant was able to raise on his toes and heels without weakness and squat with difficulty. (Id.) Straight leg raising produced low back pain. (Id.) Dr. Orphanos noted that Claimant's sensation and motor function was normal and that he had no radicular symptoms. (Id.) Dr. Orphanos concluded that the most recent injury was a soft tissue injury with no definite neurological abnormalities or radiculopathy on examination. (Tr. at 139) Dr. Orphanos opined that Claimant had not reached maximum medical improvement and that continued physical therapy should improve his lumbar range of motion. (Id.)

_Dr. Amores_.

On February 1, 2005, Dr. Constantino Amores, M.D., on the referral of Dr. Chipley, conducted a neurological examination of Claimant based on his complaints of pain in the low back, legs, and left foot. (Tr. at 401-07.) Claimant described the pain as aching and stabbing in nature, with numbness in the left foot and leg and weakness in the low back. (Tr. at 401.) He reported that the symptoms were improved with lying down on the left side and with Hydrocodone, and were made worse by lifting, walking, and standing. (Id.) A review of systems revealed complaints of fatigue, frequent headaches, decreased range of motion, mood swings, and feelings of depression.

12

(Id.) On neurological examination, Dr. Amores observed that Claimant was alert and oriented, and complained of lumbar pain on every move. (Tr. at 402.) Range of neck and extremity motion were normal, and Claimant had normal muscle strength and tone of all extremities. (Tr. at 402-03.) Claimant's range of spine motion produced pain on flexion and extension. (Tr. at 402.) Straight leg raising was without limitation. (Tr. at 403.) Dr. Amores diagnosed degenerative disc disease and recommended "conservative, non-surgical treatment," that should include an "initial drastic reduction in activity to minimize aggravating the problem," anti-inflammatory medications, physical support, and an active physical therapy program for strengthening. (Id.)

*Dr. Beard*.

On November 21, 2006, Dr. Kip Beard, M.D., conducted a consultative examination of Claimant as ordered by the ALJ. (Tr. at 452-66, 490.) Claimant complained of constant low back pain with radiation down his left leg. (Tr. at 452.) He reported numbness in his left leg and all of the toes on his left foot, which was worsened with every step that he took. (Id.) Claimant noted that the pain was increased with walking, lifting, or bending, and that he used heating pads and Biofreeze for pain relief. (Id.) Dr. Beard noted that Claimant did not use a back brace. (Id.) Claimant reported a treatment history to include physical therapy, use of a TENS unit, chiropractic care, and hydrocodone. (Id.) Claimant also complained of shortness of breath with a variable cough that usually was productive in the morning. (Tr. at 453.) Claimant reported that he smoked one third pack of cigarettes a day. (Id.) His treatment had included Singulair, which was helpful. (Id.)

On examination, Dr. Beard observed that Claimant's gait was mildly forward bent in posture and mildly slow in appearance without limp or use of ambulatory aides. (Tr. at 454.) Claimant had a mild degree of difficulty arising from a seated position and stepping up and down from the

13

examination table, with back pain. (<u>Id.</u>) He was uncomfortable in the seated and lying down positions, and exhibited some intermittent abrupt jerks, which Claimant reported were from the back pain. (<u>Id.</u>) Claimant was able to speak understandably and follow instructions without difficulty. (<u>Id.</u> Claimant reported moderate pain in the neck and low back with some motion loss. (Tr. at 455-56.) Claimant however, was able to stand on one leg alone, walk on his heels and toes, walk heel-to-toe, and squat two thirds of the way with back pain. (Tr. at 456.) Seated straight leg raise testing was 90 degrees bilaterally with back pain and 70 degrees bilaterally with back pain in the supine position. (<u>Id.</u>) Dr. Beard noted some nonspecific sensory loss of the left lower extremity, but no weakness or atrophy. (<u>Id.</u>) The x-rays of Claimant's cervical and lumbar back revealed some anterior spurring of the cervical vertebrae with a few levels of diminished disk space and some osteophytic spurring with relatively preserved disc spaces of the lumbar spine. (Tr. at 456, 458) Examination of Claimant's lungs revealed that they were clear to auscultation and percussion, without wheezes, rales, or rhonchi. (Tr. at 455.) Breath sounds were symmetrical bilaterally. (<u>Id.</u>) Dr. Beard diagnosed cervical and lumbar degenerative disc disease and sponylosis, chronic lumbosacral strain with chronic left radicular symptoms, and moderate obstructive pulmonary disease per pulmonary spirometry . (Tr. at 456, 459-62.)

Dr. Beard also completed a form Medical Source Statement of Ability to Do Work-Related Activities (Physical), on which he opined that Claimant was capable of lifting and carrying twenty-five pounds occasionally and twenty pounds frequently; and stand, walk, and sit about six hours in an eight-hour workday, with periodic alternating between sitting and standing to relieve pain or discomfort. (Tr. at 463-64.) Dr. Beard opined that Claimant's ability to push and pull was limited in all extremities due to back and neck pain of a mild to moderate degree. (Tr. at 464.) In support

14

of these limitations, Dr. Beard noted Claimant's history of chronic neck and back pain, as well as his examination of Claimant, x-rays, and Claimant's reports of shortness of breath and COPD. (Id.) Dr. Beard further opined that Claimant occasionally could climb, kneel, crouch, crawl, stoop, or reach in all directions, and frequently could balance. (Tr. at 464-65.) He further opined that Claimant should avoid temperature extremes and vibration, which could exacerbate his chronic back pain, and avoid hazards. (Tr. at 466.)

   *Dr. Chipley*.

   As noted above, Claimant also received physical therapy and chiropractic treatment. (Tr. at 161-86, 195-391.) Claimant received treatment from Julian Chipley, a chiropractor, from October 22, 2003, to December 22, 2004. (Tr. at 195-391.) Following Claimant's March, 2004, injury, Dr. Chipley noted on May 5, 2004, that objective findings revealed a "chronic lumbo/pelvic sprain with joint dysfunction and myositis as well as probably ligamentous instability." (Tr. at 289.) In addition to Dr. Chipley's chiropractic treatment and home exercises, Claimant was being treated with over-the-counter medications on an as needed basis and topical analegesics. (Id.) Dr. Chipley noted positive straight leg raising, tenderness, muscle spasm, and some restriction in movement. (Id.) However, clinically, Claimant responded to treatment and was able to increase his activities of daily living with increased walking. (Id.) Dr. Chipley further noted that a MRI revealed no disc herniation, and therefore, most of his symptoms were likely ligamentous in nature. (Id.) On June 14, 2004, Dr. Chipley noted that Claimant's intensity of pain had reduced with treatment from a level ten out of ten to a six out of ten, though he was taking Skelaxin and Hydrocodone as prescribed by Dr. Daniel. (Tr. at 269.)

   On November 10, 2004, Dr. Chipley opined that Claimant's condition was guarded. (Tr. at

215.) He explained that Claimant continued to have "palpable trigger points with muscle spasm and associated jump signs in his lumbar spinal region," as well as "multiple positive findings on orthopedic examination including supine straight leg raiser." (Id.) Nevertheless, MRI studies continued to be negative for any significant disc bulging or herniation. (Id.) Dr. Chipley noted that functionally, Claimant's activities of daily living were increased when coupled with the medication prescribed by Dr. Daniel. (Id.) "However, anytime he increases his activities it appears to significantly exacerbate these injuries." (Id.) Overall, Claimant's range of thoraco-lumbar motion had increased. (Id.) Dr. Chipley opined that Claimant had plateaued from any kind of physical medicine and was totally temporarily disabled. (Tr. at 216.) On December 22, 2004, Dr. Chipley requested that the Workers' Compensation Division refer Claimant for a neurosurgery consultation. (Tr. at 197.)

   *Dr. Lambrechts*.

   On January 24, 2005, Dr. Marcel G. Lambrechts, M.D., a state agency physician, completed a form Physical Residual Functional Capacity Assessment. (Tr. at 392-400.) Due to Claimant's low back pain with radicular symptoms to the legs, Dr. Lambrechts opined that Claimant was limited to performing work at the light level of exertion, with occasional postural limitations. (Tr. at 392-94.) He further opined that Claimant should avoid concentrated exposure to extreme cold and vibration. (Tr. at 396.) Based on Dr. Orphanos's examination, Dr. Lambrechts concluded that Claimant's symptoms of low back and leg pain were credible, but magnified. (Tr. at 397.)

   *Dr. Reddy*.

   On July 11, 2005, Dr. Uma P. Reddy, M.D., another state agency physician, also completed a form Residual Functional Capacity (Physical) Assessment. (Tr. at 412-20.) Dr. Reddy opined that

16

due to Claimant's low back pain with radicular symptoms to his legs, Claimant was limited to performing work at the light level of exertion with occasional postural limitations, with the exception of never climbing ladders, ropes, or scaffolds. (Tr. at 412-14.) Dr. Reddy further opined that Claimant should avoid concentrated exposure to extreme cold, vibration, and hazards. (Tr. at 416.) Dr. Reddy noted that Claimant's reported activities of daily living seemed "a little disproportionate to the actual physical limitations," and therefore, found Claimant to be partially credible. (Tr. at 417.) In rendering the assessment, Dr. Reddy specifically considered the May 2, 2005, assessment by Dr. Daniel. (Tr. at 418.) Dr. Reddy explained why Dr. Daniel's conclusions were not supported by the evidence of record as follows:

> There are 2 medical impressions with a difference in them one 2/05 and the other 5/05, considering both the statements and the actual physical findings in the actual exams rather than statements, this claimants physical activities are reduced as noted [in] the RFC. Standing and sitting can be done intermittently for 6 hours in 8 hour work period.

(Tr. at 418.)

In her decision, the ALJ did not accord Dr. Daniel's May 2, 2005, assessment controlling weight because it was based on Claimant's subjective reports, which the ALJ found were not substantiated by his treatment and medical findings. (Tr. at 17.) The ALJ noted that the lumbar MRI "revealed only minimal annular bulge and x-rays of the lumbar spine revealed only minimal degenerative changes." (Id.)

As discussed above, Dr. Daniel's treatment notes reflect only conservative treatment with medications and chiropractic treatment. The notes further reflect Claimant's subjective complaints of low back pain with radiation and other symptoms, but contain very little in the form of objective evidence. He consistently found that Claimant had no neurological abnormalities. Likewise, Dr.

17

Daniel's failed to cite any objective findings that supported his opinion. Thus, the ALJ properly found that dr. Daniel's opinions were inconsistent with his treatment notes.

Contrary to Claimant's argument, the Court further finds that the ALJ properly discredited Dr. Daniel's opinion based on Claimant's unsupported subjective complaints. See Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001) (finding that an ALJ may give lesser weight to a treating physician's opinion that "was based largely upon the claimant's self-reported symptoms."). Though Claimant does not challenge the ALJ's finding that Claimant's subjective complaints were not entirely credible, he asserts error in the ALJ's reliance on this finding as a basis for not according controlling weight to Dr. Daniel's opinion. The Court thus will not engage in a review of the ALJ's credibility analysis regarding Claimant's alleged symptoms and pain. Dr. Daniel's opinion does not cite any specific objective findings to support his opinion. Rather, they appear to be based on Claimant's subjective complaints, which the ALJ found not entirely credible. Accordingly, the Court finds that such reliance by the ALJ was proper and in accordance with the controlling case law.

As the Commissioner notes, and as discussed above, Dr. Daniel's opinion also is inconsistent with the well-supported opinions of Drs. Beard, Lambrechts, and Reddy, all of whom found that Claimant could perform light exertional level work.

Contrary to Claimant's allegations that the ALJ failed to consider Dr. Daniel's length of treatment, extent of treatment, and specialty, also are without merit. In her decision, the ALJ specifically acknowledged that Dr. Daniel's was Claimant's treating physician. (Tr. at 15.) The ALJ also considered the extent of Claimant's treatment and summarized the treatment and evaluations by Drs. Chipley, Hasan, Amores, and Beard. (Tr. at 14-15.) Additionally, the ALJ acknowledged that Claimant was treated with medications and a TENS unit, and did not require surgery. (Tr. at 14-

18

16.) Finally, though not specifically mentioned in the ALJ's decision, Dr. Daniel was a family physician without an orthopedic specialty as did Drs. Orphanos and Amores. (Id.)

In view of the foregoing, the Court finds that the ALJ's decision regarding Dr. Daniel's opinion is in conformity with the rules, Regulations, and pertinent case law and that substantial evidence supports the ALJ's decision that Dr. Daniel's opinions were not entitled controlling weight.

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is supported by substantial evidence. Accordingly, by Judgment Order entered this day, the Plaintiff's Motion for Judgment on the Pleadings (Document No. 12.) is **DENIED**, Defendant's Motion for Judgment on the Pleadings (Document No. 13.) is **GRANTED**, the final decision of the Commissioner is **AFFIRMED**, and this matter is **DISMISSED** from the docket of this Court.

The Clerk of this Court is directed to send a copy of this Memorandum Opinion to counsel of record.

ENTER: March 31, 2009.

R. Clarke VanDervort
United States Magistrate Judge

19